Good morning, Your Honors, and may it please the Court. Alexandra Yates on behalf of Defendant Appellant Jordy Ochoa is challenging the validity of his guilty plea and three-year sentence for illegal re-entry. And, Your Honors, we've raised a somewhat complicated issue about the proper categorization of Mr. Ochoa's prior felon in possession conviction, and I hope to address that in just a minute, but I thought I would start with the procedural errors that the District Court made at sentencing, because whatever this Court decides about the aggregated felony question, Mr. Ochoa is nonetheless entitled to a new sentencing hearing because the District Court failed to adequately explain its sentence. And let me explain why the District Court's explanation was inadequate for this Court to conduct meaningful appellate review, which is, of course, the standard. Your Honors, this is a case where the District Court imposed an above-guideline sentence despite significant, compelling mitigation that was presented. This was mitigation that the District Court left wholly unaddressed, and it was mitigation that was presented as a non-frivolous basis for nothing more than a low-end guideline sentence, yet it was not discussed at all. This is a case where the government asked for an above-guideline sentence based on completely improper factors, prior juvenile adjudications and an arrest that was dismissed. The Mr. Ochoa contested the propriety of considering those factors in a reply to the District Court. The District Court said nothing about this. The Court gave an above-guideline sentence just one month off of what the prosecution was requesting, but we don't know if that's the case. Kagan I know that the fast-track plea agreement issue is not currently before us. It's not something that was challenged. But what was the offer under the fast-track plea agreement had Judge Wilson accepted that? Because this was at a time when he had that standing policy of not accepting fast-track biding plea agreements. I know he doesn't have that policy anymore, but what would have the resulting guideline range been under that particular plea agreement? The fast-track that was offered and that Mr. Ochoa did sign was a plus-16 fast-track, and that would have resulted in a low-end guideline sentence of 37 months. However, prior to entering his change of plea in this case, Mr. Ochoa got new counsel. And apparently at some point in there, everyone came to the realization that this was not actually a plus-16 case. So is that based on the PC-69, Penal Code 69 conviction enhancement, which then the government later realized shouldn't have resulted in a 16-level enhancement? That's exactly right, Your Honor. So we have no reason to believe that Mr. Ochoa would have actually gone forward and entered a plea based on that plus-16 agreement. But that was the agreement, and that's precisely why, of course, we, you know, haven't raised the issue of the blanket policy, because we're not interested in going back for that plus-16 fast-track, because everybody agrees that that would be inappropriate in this case. Just returning to some of the other errors that the Court made in this case. So we don't know how the Court balanced these factors. The Court said nothing about the PSR, which is a very central document, a central part of sentencing. It was wholly inaccurate. It worked under the misapprehension that this was a plus-16 fast-track, and of course it wasn't. The Court said nothing about that. The Court gave a boilerplate explanation for the sentence. So there's no way to tell how the Court balanced these factors, why it rejected these non-frivolous arguments, the mitigation. And if I could just briefly talk about the mitigation, because I do think it was truly compelling here, and the Court's refusal to discuss it at all is a serious problem. Ms. Sherry. Can I get you to go back just for one minute, because you're also challenging the adequacy of the Rule 11 colloquy by the judge, as well as sentencing. I know we'll have a lot to talk about with regard to sentencing issues. But given the way that this case proceeded with the fast-track plea agreement that had the 16-level enhancement, albeit erroneous, and then proceeding with a plea before the Court without the binding agreement, the judge made a mistake in failing to go through the guidelines. But by the time of sentencing, he had the benefit of reviewing the PSR, obviously consulting with counsel, hearing the Court's tentative, understanding what the government's position papers were. So how did the Rule 11 error affect his substantial rights? I want to make sure I understand that before we move to sentencing issues. Absolutely, Your Honor. And, of course, the test for affecting substantial right is just whether there's a reasonable probability that he might have done something different, which the Supreme Court has emphasized in Dominguez-Benitez is a relatively low standard, less than a preponderance of the evidence, just enough to basically give this Court cause. This Court has squarely held that any explanation he may have received from counsel and, of course, that's not apparent from the record, is not enough. That's the Smith case we cited in our briefs. Well, sure, but you're talking about 1326 conviction. And by the time that sentencing proceeded, whatever was on the table at that point was certainly better than what was in the fast-track plea agreement. And didn't he know, without reliance on what was discussed with counsel, didn't he know by that point that the sentence would be calculated based on guideline factors considerations? That's not clear from the record, Your Honor. The only document that the Court asked whether he had reviewed was the PSR. And the PSR, of course, was inaccurate and perpetuated the same problem that we've argued in our Rule 11 claim was the issue, which was leading him to believe that he would be getting guaranteed a low-end guideline sentence, and that that was the only consideration. What I also think is perhaps implicit in the Court's question is, well, you know, he was willing to take this plus-16 agreement, you know, a higher sentence, and is that a problem here? But I think that presupposes that the question is really what his choices were at each point in time. So at the point he was offered the plus-16 fast-track, the choices apparent to him based on apparently the what we can assume might have been the advice of counsel, we don't know, but the choices that were apparent to him were take a plus-16 fast-track and get seven levels reduction, so a significant benefit and a guarantee of a low-end sentence, or go to trial. By the time we're at the change of plea where we assert that the Rule 11 error happened, and there's no dispute that there was a Rule 11 error. We're purely talking about the third and fourth grounds here. By that point, his choices were go to trial or do an open plea, both presumably under a plus-8 or maybe he thought a still plus-16, but either way, I mean, it would have been parallel, and get a very, very minor benefit, no guarantees. But he wasn't told this. The Court did nothing to just abuse him of the notion that he may well have had, that he was guaranteed a low-end sentence. By the time of sentencing, although again, you know, this Court's held that this isn't really a relevant factor, but nonetheless, by the time of sentencing, the only document we know that he reviewed was the PSR, which perpetuated the error. So we do believe that the third prong and its relatively low standard is met, and certainly be true. As a practical matter, which would you prefer, a holding out of us that says, you know, the plea was improperly taken and we start over, or we stay with the plea and simply remand for resentencing? I'm not asking, this is not a legal question so much as a strategic question, because, you know, there are lots of reasons why, even if the plea was incorrectly taken, why you may wish to keep the plea intact. I understand why you have to make the argument that it was incorrectly taken, but I'm trying to figure out what your, which of those two things your client would prefer. Practically, at this point in time, having served 18 months, it may not be wise for Mr. Ochoa to decide to go to trial, because he would probably at that point be extending the case to a place where a resentencing would be a better outcome. I don't say that to concede there's no reasonable probability. There may well be, and I think the question is back at the time of Rule 11, not now. So as a practical matter, a remand for resentencing may well get him to the same place, and that could be done on the aggregated felony issue or the failure to conduct meaningful appellate review. And if this Court chose not to address the Rule 11 error, I think that that would be something that would sit fine with Mr. Ochoa. But I don't say that to concede the reasonable probability. I understand. Okay. I interrupted you when you were going through the sentencing issue. So would you like to pick up where you left off? Thank you, Your Honor. I do see that I only have one minute remaining. I did hope to save some time for rebuttal. Would the Court like me to continue on the sentencing issues? Well, sure. Answer the question. Thank you, Your Honor. You talk so fast, you get a lot in in a minute. I apologize, Your Honor. I'm from the Northeast. I can't help it. I know. It's part of the new generation. I'll try to slow down, Your Honor. I just did want to briefly address the mitigation, because I do think it was really compelling here, and the failure to address it is a significant error. Mr. Ochoa was brought here when he was an infant, only 7 or 8 months old. He's lived here his entire life. His entire family is here, including his two very young U.S. citizen children. He was deported only one time. This is not someone who's been a serial 1326 offender. When he was deported, he was deported to Honduras, a very dangerous country, where he had never lived, knew nobody, had no family. And because he was seen as basically an American, which for all intents and purposes he was, he was targeted for violence. He was stabbed. He ended up in the hospital with a punctured lung. Thankfully, he survived. But on his release, he left Honduras and came back to be with his family in the only country he'd ever known where he was much safer. He has a nonviolent criminal history. He's never been to prison. And after returning, unlike many 1326 defendants that we see, he committed no new offenses. He was here unlawfully, but other than that, he, by all accounts, was living a law-abiding life. The Court gave no explanation for why this was what made for an above-guideline sentence. There were no real aggravating factors in this case, and I don't think that this was an above-guideline sentence out of that mitigation that was not addressed. So for that reason alone, we believe that a remand for resentencing was required. I'm happy to address the aggravated felony issue if the Court would like. Otherwise, I would hope to save some time for rebuttal. Thank you, Your Honor. May it please the Court. James Love for the United States. In this case, the government concedes that the district court made a Rule 11 violation by not advising the defendant of the factors that it would consider in determining the appropriate sentence. However, defendant's argument in this area still fails under plein air review, because it fails under the third prong, in which we have to look at three specific factors to determine whether or not there was a reasonable possibility that the defendant would have withdrawn his guilty plea. First, we have to look at the strength of the government's case and any possible defenses. Defendant, who has the burden in this case, did not address these factors at all. This was a Section 1326 case, an incredibly easy case to prove. The defendant was an alien. He was deported. He voluntarily came back. I mean, that's about all there is to these cases. And then there's any possible defenses. The defendant cites none. It mentions that possibly he would have got acceptance of responsibility and went to trial. That's a separate issue. And even so, it's a red herring. And even then, there's only a limited number of defenses that you could present and still receive some reduction in your offense level for acceptance of responsibility. Second? Assuming that he can't show there's a reasonable probability that but for the error he would have acted differently, meaning not enter the plea, what about the court's sentencing errors? Yes, Your Honor. I'll address that. First of all, it would be best if a court did give a full explanation as to its reasoning in imposing a particular sentence. But pursuant to this Court's unblocked decision in Cardi, that alone is not fatal. You can look at the entire record, including the sentencing positions, including the PSR, to determine whether or not there was sufficient information for a meaningful appellate review, in which case there was. In this case, we have the sentencing positions lay out the mitigating and adverse factors in this case. The fact that the defendant was only 24 years old, had three juvenile adjudications, four convictions, and an arrest for murder. He's already racked up a fairly serious criminal history. We also have the fact that we must assume that the court followed the law and that he did read the position papers in the PSR. And as a matter of fact, if you look at the transcript for the sentencing hearing, the court in this case did in fact read the PSR because it quoted it at paragraphs 44 and 47, when the court was referring to particular sentences that the defendant received. So if we look at this record as a whole, there is, we can infer why the judge came to the decision that the judge did. In particular, the judge believed that these adverse factors outweigh the mitigating factors to such an extent that it warranted an above guideline sentence. And even if that record was insufficient, the defendant's claim will still fail on the third prong, that of prejudice. In that, would the court impose a different sentence but for not giving a more lengthy explanation? And there's nothing in this record that indicates that the court would have imposed a different sentence if it had just explained its sentence a little bit more thoroughly. And then there's also nothing to indicate in the record that the court would have not imposed supervised release if it had given a more thorough explanation. As a matter of fact, despite a recent change in the guidelines regarding supervised release for deportable aliens, the district court judges in Los Angeles are still implying supervised release as a matter of due course in almost every case. And Did the district judge plainly err in failing to conduct a modified categorical approach to the felon in possession conviction? Well, first of all, Your Honor, we have to look at whether or not invited error applies in this case. And the government believes that it does because this was first mentioned in the government's sentencing position. And then it was implicitly mentioned in the defendant's sentencing position, in which they agreed to the guideline range which would infer an eight-level enhancement for an aggravated felony. What about Gallego's Covindo that just came out in January, on January 17? I was about to address that, Your Honor. That one, first of all, there was only an implicit, there was only an implicit acknowledgment of the enhancement. In this case, we have both the implicit in the defendant's sentencing memo and an explicit acknowledgment that there was an eight-level enhancement for an aggravated felony. Specifically, during the sentencing hearing, defense counsel was asked about what conviction was the aggravated felony. And when the court referred to the felon in possession of a firearm, the defense counsel said, quote, that's the aggravated felony, unquote. So as opposed to the recent Ninth Circuit case that Your Honor cited, which I will butcher if I do the pronunciation, I apologize. But that one, there was only an implicit argument. And here we have an explicit one, which is consistent with other decisions this court has issued regarding invited error, where there was actually an express waiver on the record. Now, what's the difference between invited error and plain error? I mean, plain error, I understand, defense lawyer usually doesn't make an objection. District judge, understandably, is going to feel a little bit sandbagged if the first time it shows up is on appeal, and so we've got a plain error standard. But invited error is even, poses even more difficulty for the lawyer or for the client whose lawyer invited the error. Is there some volitional requirement for invited error beyond, you know, by my actions I encouraged the district judge to think that it was okay, but I intended the district judge to think it was okay? So help me out in terms of what are the requirements for invited error as distinct from plain error? I'm sorry, I don't quite understand the last part of your question. I'm trying to figure out what the distinction is, or distinctions are, as I try to figure out whether it's plain error or invited error. And I don't want, for the moment, you to talk about the facts here. I just want you to give me the doctrine. I believe that it has to be some kind of affirmative act by defense counsel. Does it have to be an affirmative act with an intent to invite the error, or merely with the effect of inviting the error? I do not believe that makes a substantial difference. No, I'm asking if there is a difference in the doctrine. I do not believe so, Your Honor.  May I continue? Yes, sure, sure. Thank you, Your Honor. In regards to the modified categorical approach in this case, it was not necessary for the court to go through that analysis due to the invited error that took place here. But if this course were to consider the modified categorical approach, that's where, for lack of a better term, the government was sandbagged in this case because it didn't have the opportunity, or more accurately, didn't need to take the opportunity to prove that, under the modified categorical approach, that the felon in possession of a firearm qualified as an aggravated felony. But if we were to send it back, then you'd get an opportunity before the district court to do that. We could do that, or the court could take judicial notice of the documents that's been placed before it. The government understands that the court discourages such action, but we believe it is appropriate in this exception to the rule because it will just completely resolve the issue. The documents are fairly clear in this respect, and that what the jury was instructed on in the second trial regarding the felon in possession was that the defendant possessed or received, and the state appellate court also took notice of the fact that the defendant was indeed in possession of a firearm when it was in his waistband, and then the police saw him give it to somebody else, or he threw it into their purse. And so the government... Well, let's talk about that to see whether the judicially noticed documents can really show us that that was an aggravated felony, because California law, felony in possession charge punishes ownership as well as possession. And so how do we know from the documents that the government submitted and you've asked us to take judicial notice of, show that it was not for ownership versus possession? What documents would indicate that? First of all, Your Honor, we have the facts that were stated in the state appellate court decision. Second, we have the jury verdict form, which is a judicially noticeable document, which refers to possession and not ownership. Well, the facts in the state appellate court decision, that came up with regard to discovery dispute, a Pitch's motion, correct? I don't remember offhand, Your Honor. But it was the facts were stated in the state court's opinion with specificity. And then we have the verdict form. And then we also have the jury instructions, which refer to possession or receiving a firearm. There is no mention at any time in those instructions about ownership or the word own or something along those lines. It seems that the jury was only instructed as to possess or receive. Well, with regard to the facts described in that opinion, do we know from looking at that opinion whether additional facts were presented in the second trial? I mean, during the trial? Right. I'm sure that there were some additional facts that were presented during that trial, such as the fact that they couldn't find the fingerprints of the defendant on the firearm, which is not terribly unusual. And there was no DNA from the defendant on the firearm. I believe that was in the appellate record as well. Like I said, that's the question. So you're drawing an inference. You're asking us to infer that because the facts were described as such in that opinion resulting from the first trial, therefore, that precludes any thought on the jury's part that there was an ownership issue here. Well, I think that the jury instructions in this case clear that up, Your Honor, that it only refers to possession or receive or receipt or receive as opposed to own or ownership. That is the ‑‑ I believe that's the most critical document out of the three that the government relies upon is the jury instruction. May I get back to the first argument, Your Honor? Yes, please. Thank you. Going back to the three different factors that we must consider for our Rule 11 violation, we consider the strength of the government's case and any possible whether or not there was any misunderstanding that was ‑‑ and whether that misunderstanding was inconsequential. In this case, there was no misunderstanding. During the change of plea hearing, defense counsel noted that the court did not accept fast tracks, which indicated that this was an open plea. The defendant himself says, quote, I thought I had to sign the fast track, indicating he knows he's not going forward with a plea agreement and that it was signed. The government also says that this was an open plea. And then finally, near the end of the change of plea hearing, the court says there is no plea bargain here. So at that point, everybody knows that nothing about this plea agreement was in place, that we were proceeding with an open plea and that there was no guarantees to the defendant. And if there was any confusion, then why would the defendant be complaining about the sentence he would have received under the fast track plea agreement with a low end of a guideline range of 37 to 46 months, he would have received a 37‑month sentence. He got one less than that. Instead, his counsel was arguing for a guideline sentence with a ‑‑ resulted in a low end sentence of 24 months, which again shows that there was no confusion about what was going on. It was only a sentence of 24. It was a lower guideline range that was applicable. And even if there was some confusion, it should have been cleared up by the time of sentencing because by that time, the PSR had put the defendant on notices to the guidelines as to Booker, as to the section 3553A factors. And then if we look at the third factor we consider under plenary review is the relevance and significance of other facts. There isn't much here on this issue except for one critical thing in that the defendant was advised that the statutory maximum sentence was 20 years imprisonment. So he was advised that it was zero months to 240 months, and he received a sentence of 36 months. I believe my time is well over. I apologize, Your Honors. I'm not very good at keeping track of time. If the court has any more questions. Okay. Thank you all for your time. We'll take a minute. Thank you, Your Honor. And I'll try to be quick without speaking too quickly. To address the question about waiver versus forfeiture, there is a knowledge requirement. The standard is an intentional relinquishment of a known right. And there's absolutely no evidence of that here. At most, we're under the plain error standard. And that comes from Lorienti. Waiver is different from invited error. Yes, I'm sorry. A waiver requires, as well, a relinquishment of a known right, an intentional act, which we don't have here. But my question is whether it went to invited error, not to waiver. I apologize, Your Honor. I think whatever the standard is, certainly in parallel cases with similar circumstances, this Court has repeatedly addressed this kind of question and not found that an agreement in district court, including under Galindo, is sufficient. As to the judicially noticeable documents and what we might find under modified categorical, the State appellate court opinion is not a judicially noticeable document, and that's clear from this Court's case law. The facts of what actually happened, which I'm quite familiar with because I'm handling Mr. Ochoa's habeas case on the 12021, and if the Court is interested in getting into the facts and wants to take judicial notice, I'd be happy to submit the full transcripts that were one witness testifying that Mr. Ochoa was present when the gun was recovered, and every other witness testifying that he was up in an apartment building in a wholly different place when the gun was recovered. So certainly ownership was a possibility here. The jury was instructed that they could convict if they found that he had the right to control the gun, which speaks in ownership and not possession. That's how possession was defined in that second trial. That's right. Well, they called it possession receipt, but then they went on to define it as including the right to control, which, you know, possession is kind of an amorphous term, and different States and statutes define it differently. And here they seem to be defining it in a way that includes ownership. I did want to just point out, government counsel pointed to this arrest for murder as a reason why this sentence is appropriate or there wasn't some sort of problem here. Arrests are equally indicative of innocence if they are repealed, which is exactly why it's problematic that we don't know whether the Court considered this arrest that the government was pointing to in district court as well. And through my work on this habeas case, I've come to see that Mr. Ochoa was actually innocent of that, and that's why he was never fully prosecuted.    And it's not that the court didn't consider the arrest, but the fact that the video evidence came to light that conclusively showed he couldn't have been the perpetrator. So this is pers — that evidence wasn't before the district court, but just goes to show exactly why we don't consider arrests and why it would have been improper for the court to consider arrest, because arrests happen to innocent people, and Mr. Ochoa was innocent in that case. I've gone beyond my time, Your Honor, unless the Court has further questions. Thank you.
judges: Pregerson, Fletcher, Nguyen